AETNA LIFE INSURANCE COMPANY *v.* SHIVELEY ET AL.

[No. 10,246. Filed November 27, 1918. Rehearing denied May 15, 1919. Petition to transfer dismissed May 20, 1921.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Compensation Agreements.*—A compensation agreement entered into under §57 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), as amended by §4 of the Act of 1917 (Acts 1917 p. 227), and filed with, and approved by, the Industrial Board, has the force and effect of an award. p. 629.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Compensation Agreement.—Parties.—Insurance Carrier.*—An insurance carrier is not a necessary party to a compensation agreement under §57 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), as amended by §4 of the act of 1917 (Acts 1917 p. 227), nor to a proceeding looking to its approval by the Industrial Board, but in view of such carrier's liability, where it seasonably petitions to be admitted, as a party to such a proceeding for sufficient cause shown, it should be admitted and heard. pp. 630, 634.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.— Compensation Agreements.—Conclusiveness.—Fraud.*—A compensation agreement entered into under §57 of the Workmen's Compensation Act (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), as amended by the act of 1917 (Acts 1917 p. 227), is not binding on the insurance carrier, either before or after its approval, as against a proper proceeding seasonably made, where such agreement is the result of mistake or is tainted with fraud or characterized by gross irregularity affecting substantial rights. p. 632.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Industrial Board.—Powers.—Vacation of Orders.*—In a proceeding pending before the Industrial Board involving either the determination or the administration of a claim for compensation, the board has the power on the application of an interested party, including an insurance carrier, to vacate its own order, on application seasonably and diligently made, where 'it appears that any such order is the result of fraud, duress, mistake or gross irregularity affecting substantial rights. p. 632.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Industrial Board.—Nature of Jurisdiction.*—The Industrial Board is a body created primarily to administer the Workmen's Compensation Act (Act 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), and it is only incidentally that it exercises quasi-judicial powers. p. 633.

6. MASTER AND SERVANT.—*Workmen's Compensation Act.— Industrial Board.—Powers.*—The Industrial Board possesses only powers expressly granted by the Workmen's Compensation Act (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), together with those arising by implication because necessary to the full exercise of the granted powers. p. 633.

7. MASTER AND SERVANT.—*Workmen's Compensation Act.— Fraud.—Burden of Proof.*—In a proceeding by an insurance carrier to set aside an order approving a compensation agreement entered into under §57 of the Workmen's Compensation Act (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), as amended by the act of 1917 (Acts 1917 p. 227), it being alleged that such agreement was executed fraudently, the burden of showing fraud rested on the insurer. p. 633.

8. MASTER AND SERVANT.—*Workmen's Compensation Act.— Appeals.—Failure to Find.—Presumption.*—On an appeal from an order of the Industrial Board refusing to vacate, on the petition of an insurance carrier, an order approving a compensation agreement alleged to have been entered into fraudulently, it will be assumed, that there was no fraud, where there

was no finding, on that issue, and the facts found were not sufficient to compel an inference of fraud. p. 633.

9. MASTER AND SERVANT.—*Workmen's Compensation Act.— Record.—Presumptions.—Rules of Industrial Board.*—On an appeal from an order of the Industrial Board, it will be assumed, in the absence of a finding to the contrary, that there was no rule of the board requiring that the matter of the approval of a compensation agreement be formally set for hearing and notice served on the insurance carrier. p. 633.

10. MASTER AND SERVANT.—*Workmen's Compensation Act.—Industrial Board.—Powers.—Vacation of Orders.—Fraud.*— Where the Industrial Board's approval of a compensation agreement has been procured by fraud or is the result of mistake, and, as a consequence, the agreement or its approval has no just foundation upon which to stand, the board has the right, in any pending proceeding to determine such fact and annul the order approving the agreement. p. 634.

11. MASTER AND SERVANT.—*Workmen's Compensation Act.—Compensation Agreements.—Rights of Insurance Carrier.*— Where an insurance carrier has had reasonable opportunity, to be heard on the proposition of the approval of a compensation agreement, but has failed to avail itself of such opportunity, its motion to vacate an order of approval should not be entertained unless it clearly excuses the failure. p. 634.

12. MASTER AND SERVANT.—*Workmen's Compensation Act.—Approval of Compensation Agreement.—Vacating.—Duty of Insurance Carrier.*—Where an insurance carrier claims that the action of the Industrial Board in approving a compensation agreement is the result of error, or has been induced by improper conduct, and it seeks to procure the vacation of the approval order for such reason, it should not unreasonably delay action, and should be required to make an *ex parte prima facie* case on the merits. p. 635.

13 MASTER AND SERVANT.—*Workmen's Compensation Act.—Orders of Industrial Board.—Affirmance.—Right Result.*—An order of the Industrial Board denying a petition of the insurance carrier to set aside a compensation agreement will be affirmed, if a proper result was reached, notwithstanding apparent irregularities in the proceedings. p. 636.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Ever M. Shiveley against Shiveley Brothers, a corporation, in which applicant and the de-

fendant entered into a compensation agreement which was approved by the Industrial Board. From an order refusing to vacate the order approving the compensation agreement, the Aetna Life Insurance Company, defendants insurance carrier, appeals. *Reversed.*

*J. W. Fesler, Harvey J. Elam, Howard S. Young* and *Solon J. Carter,* for appellant.

*Robert J. Loveland,* for appellees.

CALDWELL, J.—Under the provisions of §57 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), as amended (Acts 1917 p. 227, §4), there was filed with the Industrial Board, November 7, 1917, a memorandum of compensation agreement, bearing date of October 27, 1917, executed by appellee Shiveley Brothers, a corporation, as employer, and by appellee Ever M. Shiveley, as surviving dependent, wife of Orestes E. Shiveley, a deceased employe of such corporation. The memorandum recited the necessary facts to entitle Ever M. Shiveley to an award of a definite amount of compensation under the act and in harmony with the recited facts, and fixed such compensation, including an allowance for burial expenses and doctor bills, in the gross sum of $4,070, to be paid in such installments as should thereafter be determined by the Industrial Board under the provisions of the act. The memorandum provided also that pending its consideration by the board, due notice should be given appellant as insurance carrier. November 10, 1917, the board by one of its members indorsed its approval on the memorandum.

December 5, 1917, appellant filed with the board its verified petition, naming appellees as defendants thereto, and praying thereby that the approval of the compensation agreement be set aside, and the cause heard on its merits. The petition alleged facts to the

following effect: That appellant under the terms of its contract of insurance, and as insurance carrier, was directly liable for any claim that might be awarded on account of the death of Orestes E. Shiveley as an employe of Shiveley Brothers; that Orestes E. Shiveley was not such an employe as is contemplated or embraced by the compensatory provisions of the act; that his death was not the result of a personal injury by accident arising out of and in the course of the employment; and that such compensatory agreement and its approval were the fruits of collusion and fraud on the part of appellees. The petition alleged also that appellees collusively and fraudulently prepared, executed, and filed the memorandum, and caused it to be approved without appellant's knowledge or consent. The petition contained no allegation respecting when appellant discovered that such a memorandum had been prepared, executed, filed or approved, and no reason was assigned by the petition or otherwise, why appellant did not more promptly move to annul such approval. Appellee, Ever M. Shiveley, answered the petition denying the fraud and averring facts at length to meet and overcome its allegations.

The board heard the evidence, bearing not only on the question whether the approval of the memorandum agreement should be set aside, but also respecting the merits of the claim, and made a finding of facts in part to the following effect:

The corporate stock of Shiveley Brothers corporation was owned in equal parts by Orestes E. Shiveley, his brother Cortland W. Shiveley, and O. C. Wainscott. The stockholders constituted the board of directors, of which Cortland was president. The corporation operated the principal hotel at Peru.

On and prior to July 24, 1917, the routing of the proposed Range Line Dixie Highway from Indianapolis to

South Bend was in contemplation. This highway was to be built in part at the expense of the federal government, and in part at the expense of the local municipalities and political sub-divisions. A number of cities of north central Indiana were somewhat agitated respecting the route of the highway, each being desirous that the road extend through its confines. Among these cities was Peru. A meeting was to be held at Indianapolis July 24, 1917, to consider and determine the route of the highway. As a result of a consultation between Orestes and the president of the hotel corporation, it was arranged that the former should attend this meeting, together with certain other citizens of Peru, that he might use his influence to procure the location of the highway through that city, it being believed that should the highway extend through the city, the business of the hotel operated by the company would thereby be materially increased. Thereupon on the morning of July 24, 1917, a party of thirty-five citizens of Peru started for Indianapolis in automobiles for purposes aforesaid. Included in the number was Orestes E. Shiveley, driving his own machine and carrying three others of the party as his guests. While proceeding on the trip, a front wheel of his machine broke down, and as a consequence it overturned, whereby Orestes E. Shiveley suffered severe injuries resulting in his death in a few hours. His principal object in making the trip was to attend the meeting for purposes aforesaid. However, theretofore as manager of the hotel he had cashed several checks for patrons residing in Indianapolis, which checks had been dishonored on being presented for payment. He had these checks with him and intended as a secondary or incidental purpose of the trip to endeavor to collect them.

August 31, 1916, appellant issued to Shiveley Broth-

ers the compensation insurance policy involved in this action, effective from that date and in force at the time of the death of Orestes E. Shiveley. The estimated annual premium on the policy was $33.43 based on a pay roll estimated as amounting to $8,200, with a provision that at the end of each year appellant should audit the pay roll to determine its actual amount, and that thereupon, the insured should pay an additional premium, or that the insurer should return a part of the premium that had been paid, proportional in each case, depending on whether the audit disclosed that the pay roll was more or less than as estimated. September 17, 1917, appellant audited the pay roll for the year ending September 1, 1917, which audit disclosed that for·such year it amounted to $6,607 more than as estimated, and therefore collected from the insured an additional premium of $20.78 for that year, paid and received November 24, 1917. In determining such excess of the pay roll over the estimate, the said average weekly wage of Orestes E. Shiveley from September 1, 1916, to the time of his death, July 24, 1917, appearing thereon, was counted as a part thereof.

September 18, 1917, Ever M. Shiveley was informed by Cortland W. Shiveley that she was probably entitled to establish a compensatory claim against Shiveley Brothers, based on the death of her husband, and that appellant as insurance carrier was primarily liable for its payment. On the same day at Cortland's suggestion, she executed to Robert J. Loveland, a lawyer, a power of attorney authorizing him to represent and act for her in the matter of such claim. On the same day by her attorney-in-fact, she notified appellant through its local representative, of the facts respecting her husband's death and of her claim to compensation under the Workmen's Compensation Act. Thereupon appellant, representing that it was investigating to determine

the question of compensation liability, requested that action in the matter be deferred for two weeks, which request was granted. An additional delay of two weeks was procured by appellant on the representation that it was considering suggesting that the question of compensatory liability be submitted to the board on an agreed statement of the facts. Yet another delay was procured on the representation by appellant's representative, that appellant had not fully arrived at a conclusion respecting, submitting controverted matter as above indicated.

October 27, 1917, the memorandum of compensation agreement was executed as above stated, appellant not being a party to it. November 6, 1917, claimant by attorney-in-fact mailed to appellant's representative a copy of the memorandum together with an explanatory letter reciting that claimant at appellant's request had delayed action for three successive periods, all of which had expired, and that the memorandum was then being forwarded to the board together with a request for favorable action thereon. The memorandum was filed with the Industrial Board on the morning of November 7, 1917. At about the same hour appellant by its Indianapolis representative received through the mail, the copy of the memorandum together with the explanatory letter forwarded by claimant's attorney-in-fact the day before. Appellant's Indianapolis office is situated very near the offices of the Industrial Board. Appellant's representative on receiving such copy of the memorandum with the accompanying letter promptly communicated with the secretary of the board by phone, and informed him that appellant was opposed to the approval of the memorandum, whereupon the secretary informed such representative that the matter was pending before Mr. Hughes, a member of the board, and that objections should be presented to him. No objections

to the approval of the memorandum having been presented, the board by Mr. Hughes approved it November 10, as above stated.

The matter of the approval of the compensation agreement was not formally set for hearing, or a time fixed for action thereon, and no notice of any kind was given appellant that, at any fixed time, action would be taken on the question of the approval of the agreement.

Soon after such agreement was approved, appellant by representative informed the board that it was objecting to such approval on the ground that Orestes E. Shiveley at the time of his death was not an employe of Shiveley Brothers, and that his death was not due to an accident arising out of and in the course of his employment. As we have said, the petition to vacate the order of approval was filed December 5, 1917. At the time of the approval of the agreement, the board entered no order fixing the installments in which compensation should be paid.

It is at least impliedly conceded that the finding is in harmony with the evidence. On the votes of Mr. Hughes and Mr. Perkins, Mr. Artman, the third member dissenting, the board denied the petition. Mr. Hughes grounded his vote on his judgment that under the finding, decedent at the time of his injury and death, was an employe of Shiveley Brothers, and that his injury and death were due to an accident arising out of and in the course of his employment. Mr. Perkins was of the opinion that decedent was an employe of Shiveley Brothers, but he differed from Mr. Hughes on the proposition of decedent's death being due to an accident arising out of the employment. He based his vote on his judgment that under the Workmen's Compensation Act an employer and his employe, or the dependents of the latter, have an absolute right to enter into a compensation agreement without regard to the desires of the

insurance carrier, and that the latter is bound by any such agreement so made. Mr. Artman was of the opinion that decedent under the finding was an employe of Shiveley Brothers at the time of his injury and death, but that his death was not due to an accident arising out of his employment. He differed from Mr. Perkins respecting the binding effect of a compensation agreement entered into by an employer and an employe or dependents of the latter, in its relation to the insurance carrier of the former. Mr. Artman was of the opinion that an insurance carrier is entitled to be heard on that question. Each member of the board rendered a written opinion disclosing the above facts.

From the finding and the opinions of the respective members of the board, it seems that a consideration of the substantial phases of the claim was rather more potent in the determination of the petition, than an inquiry whether such illegality or irregularity attended the execution, filing and approval of the agreement as required that such approval be annulled on application if seasonably made, and the cause assigned to be heard on its merits.

The shape in which the record comes to us requires that we consider three questions: First, the rights of an insurance carrier in such a situation; second, the petition to set aside the agreement; third, the merits of the claim.

The statute upon which the agreement was based is to the effect that an employer and an injured employe, or dependents of the latter in case of his death,

1. may agree respecting compensation to be paid under the act, and that any such agreement becomes binding and enforceable when a memorandum thereof in an indicated form, and harmonizing with the act, is filed with, and approved by, the board. (§4, Acts

1917 p. 227, amending §57, Acts 1915 p. 392, *supra.*)

An agreement entered into by the parties and approved by the board, pursuant to the terms of the statute, has the force and effect of an award. *In re Stone* (1917), 66 Ind. App. 38, 117 N. E. 669.

Subject to certain exceptions, every employer operating under the act is required to keep insured his liability thereunder, in some association authorized to transact the business of workmen's compensation insurance in this state, §68 (Acts 1915 p. 392, *supra*).

The insurer is in all things bound by and subject to the awards, judgments or decrees rendered against the insured. §73 (Acts 1915 p. 392, *supra*). The policy of insurance must be construed as the direct promise of the insurer to pay to the person entitled to compensation, all benefits awarded under the act. §74 (Acts 1915 p. 392, *supra*). All policies of insurance issued under the act must contain a provision that as between the employer and the insurer, notice to or knowledge of the former that a workman has been injured, shall be deemed notice to or knowledge of the latter. §73, Acts 1915 p. 392, *supra*. In case of an injury to a workman it is the duty of him or his representative, subject to certain exceptions, to notify the employer of the occurrence, in writing, §22, Acts 1915 p. 392, *supra*.

Section 57 (Acts 1915 p. 392, *supra*) neither in its original nor in its amended form, requires that the insurance carrier be a party to an agreement authorized by that section. Neither that section nor any other provision of the act demands that notice of such an agreement or of its approval be served on the insurance carrier. It follows that an agreement executed and approved under that section, or under that section as amended, is binding as between the insurer and the injured party or his dependents, as long as it

stands unrevoked, even though such insurer had no actual notice of its execution or approval. If the insurance carrier desires to be notified of the successive steps in the adjustment of a claim, in the absence of a rule of the board on that subject, it must look to the insured to perform that service. We find no provision of the act that prohibits the insurance carrier from exacting from the insured an obligation respecting notice, binding and enforceable as between them. Section 74, *supra,* seems to contemplate such a notice.

From what we have said, it follows that under the act an insurance carrier is not a necessary party to such an agreement as is involved here or to a proceeding looking to its approval by the board. Indeed, the act does not contemplate the insurance carrier as a necessary party to any proceeding before the board involving a claim to compensation. By this statement we mean to say that an injured workman or his representative may file such a claim, and push it until it terminates in an award, and in so doing ignore the insurance carrier without hazarding defeat or embarrassment through an objection that there is a defect of parties.

But as we have said, the act provides that the policy of insurance contain a stipulation in effect, that the insurer shall be bound by all awards rendered against the insured, and a further stipulation which must be construed as the direct promise of the insurer to the person entitled thereto, that it will pay all installments of compensation that may be awarded, or agreed on under the act. §§73 and 74, *supra.*

Under such circumstances it is our judgment that in all proceedings before the board, the insurance carrier is a proper party, where its interests are likely to be affected by reason of its obligation under its policy. Moreover, in view of its primary and direct liability as above indicated, it seems to us apparent that where an

insurance carrier, for sufficient cause shown, seasonably petitions to be admitted as a party to any such proceeding, the plainest principles of justice demand that it be admitted and heard.

It results from what we have said that the mere fact that an insurance carrier is not a party to the execution of such an agreement as is involved here, or

3. to a proceeding directed to its approval, does not invalidate it even as against such insurance carrier. It does not follow, however, that an employer and an injured employe, or dependents of the latter in case of his death, may, over the opposition of the insurance carrier, bind the latter by such an agreement, regardless of the good faith of the parties or the merits of the involved claim. Where such an agreement is the result of mistake or is tinctured with fraud or characterized by gross irregularity affecting substantial rights, or has no meritorious foundation in fact, or the like, we do not regard it as binding on the insurance carrier, either before or after its approval, as against a proper proceeding seasonably made to right the consequent wrong.

It has been intimated by this court In re Stone, supra, and we now hold that in any proceeding pending before the board involving either the determina-

4. tion or the administration of a claim, the board has the power on the application of any interested party, including an insurance carrier, to vacate its own order on application seasonably and diligently made, where it appears that any such order is the result of fraud, duress, mistake, gross irregularity, affecting substantial rights and the like. See the following: Wilcox v. Clarage Foundry, etc., Co. (1917), 199 Mich. 79, 165 N. W. 925; Carpenter v. Detroit Forging Co. (1916), 191 Mich. 45, 157 N. W. 374.

In so holding we recognize that the Industrial Board

is a body created primarily to administer the Workmen's Compensation Act, and that incidentally only, it exercises quasi-judicial powers. *In re Stone, supra; Borgnis* v. *Falk Co.* (1911), 147 Wis. 327, 37 L. R. A. (N. S.) 489.

5.

The board possesses only powers expressly granted, together with those arising from implication because necessary to the full exercise of the granted powers. *In re Levangie* (1917), 228 Mass. 213, 117 N. E. 200.

6.

Directing our attention more particularly to the petition and its disposition, it will be observed that the finding is silent respecting the issue of fraud. The burden of that issue rested on appellant. There being no finding on that issue and the facts found, not being sufficient by any means to force an inference of fraud, we are required to consider the case on the assumption of the absence of fraud on the part of appellees, in their relation to the agreement and its approval. *Raynes* v. *Staats-Raynes Co.* (1918), 68 Ind. App. 37, 119 N. E. 809.

7.

8.

There is a finding that the matter of the approval of the agreement was not formally set for a hearing at any definite time, and that no notice was served on appellant that action would be taken on such agreement at any fixed time. We regard these findings as unimportant in the absence of a rule of the board that such a proceeding must be definitely assigned, and notice served on the insurance carrier. In the absence of a finding to the contrary, we must conclude that no such rule exists. For purposes of carrying out the provisions of the act, the board is authorized to make rules not inconsistent with it, §55, Acts 1915 p. 392, *supra*.

9.

The board is not expressly authorized to vacate an order approving such an agreement as is involved here.

It is expressly authorized to approve such an agreement fairly made, and conforming to the act. It necessarily follows that as an incidental power the board is authorized to determine whether such an agreement was fairly made and whether it does conform to the act. But when the board's approval has been procured by fraud or is the result of mistake or the like, and where as a consequence the agreement and its approval have no just foundation upon which to stand, it seems to us apparent that in any pending proceeding the board as an incidental power has a right to determine such fact, and if found to exist, annul the order approving the agreement. Here the proceeding based on the agreement and its approval was pending before the board, not only for general administrative purposes, but also as indicated by the fact that the board had not entered an order fixing the installments in which compensation should be paid.

We have indicated that under the act, a compensation agreement properly executed by the employer and the employe or dependents of the latter in case of his death, is binding on the insurance carrier, although not a party to it or to the proceeding resulting in its approval. That is to say, the mere fact that the insurance carrier is not a party does not invalidate the agreement or its approval. We have indicated also, however, that the insurance carrier is entitled to be admitted as a party to the proceeding, looking to the approval of such an agreement, and also that he may under some circumstances move to vacate such an order. There should, however, be some finality in the action of the board. Where an insurance carrier has had reasonable opportunity to be heard on the proposition of the approval of such an agreement, but has failed to avail himself thereof, his motion to vacate such order should not be entertained

unless he clearly excuses the failure. Where he has not had reasonable opportunity to be heard, and has not been heard, or in case of causes subsequently discovered, he should acquit himself of negligence, move with reasonable promptness, or excuse the delay. In any such case, it occurs to us, that where he claims

12. that the action of the board is the result of error, or has been induced by improper conduct, he should not unreasonably delay action, and in all such cases we believe that he should be required to make at least an *ex parte prima facie* case on the merits, in order that he may procure the vacating of such an order.

It will be observed that the deductions of the members of the board from the facts found, entirely ignore the question whether appellant's diligence was such, in view of its knowledge, as entitled it to be heard respecting the annulling of the order. The negative vote of one member of the board was controlled entirely by his judgment that decedent's dependents were entitled to compensation. The negative vote of another member was grounded solely on his judgment, which we hold to be erroneous; that the employer and employe or dependents of the latter, have an unqualified right to enter into a compensation agreement, and that the insurance carrier may not challenge the result of their action. This member's judgment was that the facts did not establish a right to compensation. The third member's dissenting vote was controlled by his belief that under the facts the right to compensation did not exist, and that an insurance carrier is not bound, at all events, by such an agreement as is involved here.

Such being the situation, we are impressed that through inadvertence this proceeding did not receive that careful consideration that usually characterizes action by the board. Under circumstances such as are presented here, an application to set aside an approval

of such an agreement should be considered and determined independent of the merits of the main cause. However, in any such proceeding where the applicant acquits itself of negligence and sufficiently excuses delay, an inquiry into the merits is proper to the extent necessary to determine whether there is enough of doubt respecting the validity of the claim to compensation to justify full investigation. If there is no question respecting the right to compensation or its amount, it would be folly to set aside the approval of an agreement even though delay was excusable and diligence shown.

The application here presented a question primarily for the determination of the board. To some extent it was an appeal to the board's discretionary power. It appears affirmatively that the board in denying the application, did not in fact consider it. It also appears affirmatively that had it not been for the erroneous views of a member of the board on a legal proposition, the application would not have been denied. We are unable to determine what would have been the fate of the application had it been considered from the proper view point. If we were able to say as matter of law that the application should have been denied, then we would have a case where we could say that a proper result was reached, and affirm the action of the board notwithstanding the apparent irregularities. We cannot say as matter of law, however, that a proper result was reached. The application presented a question of fact, and such questions are primarily for the board.

If from the facts found, we were able to hold as matter of law that decedent was such an employe, and the circumstances of his injury and death were such as to entitle his widow to compensation, then also it would appear that a proper result had been reached by the

board though by a procedure somewhat irregular, and it would be our duty to affirm. But we cannot hold as matter of law that under such facts the claimant is entitled to compensation. The enterprise in which decedent was engaged at the time of his injury was, at best, but remotely connected with the enterprise in which he was employed. The one was a trip to attend a public meeting; the other was the management of a hotel. It was believed that the location of the highway as desired would result in financial benefit to the hotel enterprise, but it does not appear whether such fact, rather than his general interest in the city of Peru, was the inducing cause of decedent's endeavor to attend the meeting. At any event, it is our judgment that the question of the right to compensation here involves questions of fact which should be determined by the board.

The cause is reversed with instructions to the board to consider first, the question whether under this opinion, appellant is entitled to have annulled the order approving the agreement. Should the board be required to consider the cause on its merits, we suggest the following for the consideration of the board: At the time of decedent's injury and death was he on a mission authorized by the company? Did he and the proper representatives of the company believe that such mission might reasonably be expected to result in financial benefit to the latter? That is, did it hold out reasonable prospects that thereby the company's business might be increased? Did the fact of such prospective benefits induce the trip? As bearing on these suggestions, attention is directed to *In re Raynes* (1917), 66 Ind. App. 321, 118 N. E. 387, and *Raynes* v. *Staats-Raynes Co.*, *supra.*

Dausman, C. J., Batman, P. J., Ibach and Hottel, J.J., concur.

Felt, J., dissents.

DISSENTING OPINION.

FELT, J.—I am unable to agree with the prevailing opinion of my associates that this cause should be reversed and remanded to the Industrial Board for further consideration.

It appears that an agreement was duly made awarding compensation and fixing the amount.

The agreement was duly approved by the Industrial Board on November 10, 1917, and stands as an award until duly set aside by such board.

Appellant filed its petition on December 5, 1917, to have the approval of the board set aside and the case heard on its merits.

The prevailing opinion states that: "On the votes of Mr. Hughes and Mr. Perkins, Mr. Artman, the third member dissenting, the board denied the petition." Such opinion also states that: "The board heard the evidence bearing, not only on the question whether the approval of the memorandum agreement should be set aside, but also respecting the merits of the claim."

The board therefore heard appellant's petition to set the approval of the compensation agreement aside, and by the votes of two of its members decided to deny the petition.

An award by agreement of the parties and approval of the board is authorized by the statute and sanctioned by the courts. Acts 1917 p. 227, amending §57 of the Acts of 1915 (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918). *In re Stone* (1917), 66 Ind. App. 38, 117 N. E. 669.

So long as an award so made stands any proceedings before the Industrial Board relating to the merits of the claim is unauthorized, and in this instance, the statements made by the individual members, in passing upon the question before them, were surplusage and did not change the effect of their action in denying appellant's

petition.  *City of Pana* v. *Industrial Board* (1917), 279 Ill. 279, 116 N. E. 647.

The prevailing opinion shows that the board did consider the merits of the claim and the right to compensation, in an irregular manner, but the only question properly before it was the one presented by appellant's request to have the approval of the compensation agreement set aside.  Both the hearing on the merits and statements made by the members of the board in announcing their decision, were foreign to the question properly before the board and actually decided by it as above shown.

The reasons given for a decision may or may not be consistent with the decision announced.  But in either event, the reasons given do not change the issue nor render ineffectual the decision made and duly announced as in the case at bar.

It is universally held that an erroneous reason, given for a decision, does not affect the merits or change the binding force and effect of such decision.  *Terre Haute, etc., R. Co.* v. *State ex rel.* (1902), 159 Ind. 438-472, 65 N. E. 401; *Willan* v. *Hensley School Tp.* (1911), 175 Ind. 486-492, 93 N. E. 657; *Singer Sewing Machine Co.* v. *Phipps* (1911), 49 Ind. App. 116-122, 94 N. E. 793; *McDermott* v. *Burke* (1912), 256 Ill. 401, 100 N. E. 168; *Gillespie* v. *Ferguson Co.* (1909), 78 N. J. Law 470, 74 Atl. 460; 2 Am. Digest, Appeal and Error, Key Number 854.

Putting the case in the most favorable light for appellant, its right to a reversal depends upon an affirmative showing that the board abused the discretionary power possessed by it in denying the petition to set aside its approval of the compensation agreement, and thereby deprived appellant of some substantial right.

No abuse of such discretion is shown, but on the contrary, there appears from the prevailing opinion facts

which fully warrant the decision of the board in overruling appellant's petition, and on appeal this is sufficient.

It appears that appellant carried on negotiations looking to an adjustment of the claim; that it procured extensions of time and delayed the adjustment; that when the compensation agreement was made appellant was given a copy of it with full explanation for the action taken and was promptly advised of its presentation to the board; that appellant communicated with the board immediately after the compensation agreement was filed with it, knew the agreement was pending for approval of the board three days before the board approved the same, and then after its approval waited twenty-five days before it filed its petition to obtain a hearing before the board.

The prevailing opinion states that the "situation is such that this court cannot say as a matter of law whether or not the petition should have been granted."

Conceding this to be true, it in no way obviates the rule that places upon an appellant the burden of showing reversible error, and none is shown in this cause.

The prevailing opinion shows that appellant sought to have the approval of the board set aside solely on the ground of fraud in the making of the compensation agreement and in procuring its approval by the Industrial Board.

Fraud is never presumed and the party who alleges and relies upon it must prove his allegations or fail. There is no finding of fraud which necessarily amounts to a finding against appellant on that vital and controlling issue.

I am unable to see anything in the evidence even tending to prove fraud, but even if a different view may reasonably be taken, it is immaterial here because

appellant has wholly failed to procure a finding which shows any fraud whatever.

Furthermore, if we look beyond the petition to the unauthorized consideration of the claim on its merits, the facts of the case tend strongly to show that substantial justice has been done between the parties.

In such cases, under a well established rule of appellate procedure, any intervening technical error, which does not deprive the complaining party of some substantial right, will be disregarded on appeal.

The prevailing opinion assumes to find cause for reversal in the unauthorized hearing on the merits, in connection with the hearing on the motion of appellant, and the statements of the members of the board in announcing their decision.

At most, such hearing and statements only amount to irregularities in the proceedings, on a question not then properly before the board.

But even if we look to the statements, we find that they deal mainly with expressions of opinions as to the law applicable to the case, the main proposition being whether the accident involved arose out of and in the course of the employment of the deceased.

On the facts of the case as presented by the prevailing opinion, about which there seems to be no controversy, in the light of the decisions cited in the concluding paragraph of the opinion, there can, in my opinion, be but one reasonable conclusion, which is that the accident arose out of and in the course of the employment.

In the light of these authorities, the award made by agreement of the parties and approval by the board is legal, comes within both the letter and spirit of the compensation law and satisfies the ends of justice.

No fraud is shown, nor does it seem possible that appellant was misled or deceived in any way, but on the

contrary, the facts show that it had full knowledge of what was being done at all times, and for some reason within its own keeping, failed and neglected to take timely action to obtain a hearing, and wholly fails to show any reasonable excuse for such delay and inaction.

So appellant, in my opinion, has not only failed to show reversible error, but has likewise wholly failed to make even a *prima facie* case of great injustice, which may in exceptional cases of great hardship, justify this court in directing a rehearing in order to give a diligent party an opportunity to right an apparent wrong for which there is no other adequate remedy.