Mary HILL, Special Administrator
for the Estate of Robert Hill,
Appellant–Claimant,

v.

BETHLEHEM STEEL CORPORATION,
Appellee–Respondent.

No. 93A02–9703–EX–175.

Court of Appeals of Indiana.

Dec. 29, 1997.

Rehearing Denied Feb. 9, 1998.

Sandra E. Ferlus, Allan J. Mindel, Mindel & Associates, Merrillville, for Appellant–Claimant.

Larry G. Evans, Jack A. Kramer, Hoeppner, Wagner & Evans, Valparaiso, for Appellee–Respondent.

## OPINION

SULLIVAN, Judge.

Appellant, Mary Hill (Hill), Special Administrator for the Estate of Robert Hill, appeals the decision of the full Worker's Compensation Board (Board) in favor of Appellee Bethlehem Steel Corporation (BSC) which denied her workers compensation benefits for the injury and death of her husband Robert Hill.

We affirm.

Appellant asserts essentially three issues on appeal which we restate as follows:

(1) Whether the Board erred in vacating the "Agreement To Compensation" between Hill and BSC.

(2) Whether the Board's Award denying compensation is contrary to law because it misapplied the "positional risk" doctrine and failed to make any findings as to that theory.

(3) Whether there was any evidence supporting the Board's finding that Robert Hill's injuries and death did not arise in the course of his employment.

On the early morning of May 16, 1990, Robert Hill was found lying in a railroad depress area at BSC's steel plant in Burns Harbor, Indiana. There were no eyewitnesses to a fall by Hill from a loading platform. Mr. Hill was taken by ambulance to a hospital for treatment. He suffered a serious head injury. On May 17, 1990, Mr. Hill experienced respiratory arrest and slipped into a coma. Mr. Hill remained unconscious and in a coma until his death on January 17, 1991.

On May 23, 1990, seven days after Mr. Hill became comatose, Hill and BSC both signed an "Agreement To Compensation of Employee and Employer", or a "Form 12" agreement. On May 24, 1990, Dr. John Johnson provided BSC with an "Occupational Injury or Disease Record Supplement" report. In his report, Dr. Johnson concluded that, based upon the information he had collected at that time, Mr. Hill's injuries were not work-related. Despite BSC having received Dr. Johnson's report, the Form 12 agreement was filed with the Worker's Compensation Board on May 29, 1990. The Board approved the agreement on June 14, 1990.

On August 22, 1990, BSC filed a motion to vacate the June 14, 1990 agreement. On October 25, 1996, a single hearing member vacated the agreement after concluding that Mr. Hill had experienced an "unprotected fall", and that his injuries and death were not causally related to his employment at BSC.[1] This decision was affirmed by the Full Worker's Compensation Board on February 25, 1997.

■ The Form 12 agreement executed by Hill and BSC on May 23, 1990 was a nullity because Hill did not have the legal capacity to execute the agreement. In *Casualty Reciprocal Exch. v. Methodist Hosp. of Ind.* (1969) 146 Ind.App. 32, 252 N.E.2d 517, 523, the court held that a Form 12 agreement executed by the wife of an incapacitated employee, who was not his legally appointed guardian, was a "nullity" and "had no force or effect." The court noted that, under the Worker's Compensation Act, only an employee or his dependant, if the employee is deceased, may exercise an unchecked right to enter into a Form 12 compensation agreement. Because the employee here was still alive, the employee's wife could have validly executed an agreement for her incapacitated spouse only if she was the legally appointed guardian. *Id.* at 523.

In our case, Mr. Hill was incapacitated at the time Hill executed the Form 12 agreement. Therefore, because Hill had not yet been appointed her husband's legal guardian

---

**1.** Although there were some filings by the parties during the interim, the record does not disclose the reason for the six year delay in disposition of the Motion to Vacate.

at the time of execution, her Form 12 agreement, just as in *Casualty, supra,* 252 N.E.2d at 523, was a nullity. Because Hill's agreement was not merely voidable, but void ab initio, BSC did not waive the argument by failing to present it at the hearing stage.[2]

On October 26, 1996, a hearing judge vacated the original award which was based on the Form 12 agreement. The hearing judge's findings of facts and conclusions of law included a determination that Robert Hill suffered an unprotected[3] fall caused by a preexisting condition which created a hypoprofusion to his brain stem. He further concluded that Robert Hill's death was not causally connected to his employment. After a hearing before the full Board, the hearing judge's decision was affirmed on October 25, 1996.

■ Hill asserts that the Board had insufficient medical evidence to support its finding that her husband suffered an unprotected fall as a result of a brain stem stroke. Hill claims that the Board's finding that her husband suffered a brain stem stroke was seriously flawed because it was based on medical testimony offered by physicians who relied on results of an arteriogram to form their opinions. Hill also claims that because her husband complained of bilateral arm pain after the incident, and such pain is inconsistent with an unprotected fall, the Board's conclusion that Mr. Hill suffered an unprotected fall based on the severity of his facial injuries was pure conjecture.

■ Hill faces a deferential standard of review in her attempt to challenge the Board's findings. Upon appeal from a finding of the Worker's Compensation Board, the Court of Appeals is bound by the Board's findings of fact, and may not disturb its determination unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Rogers v. Bethlehem Steel Corp.* (Ind.App.1995), 655 N.E.2d 73, 75. In reviewing a decision of the Board, the Court of Appeals reviews the record to determine if there is any competent evidence of probative

value to support the Board's findings. We then examine the findings to see if they are sufficient to support the decision. *K–Mart Corp. v. Morrison* (Ind.App.1993), 609 N.E.2d 17, 27, *trans. denied.* Therefore, to prevail upon her appeal, Hill is required to show that there was no probative evidence from which the Board might reasonably conclude as it did. Because the record contains competent evidence to support the Board's claim, Hill's appeal must fail.

At least three separate doctors testified that Mr. Hill suffered an unprotected fall as the result of a brain stem stroke. Dr. John Swarmer, a critical care specialist who was one of Mr. Hill's attending physicians at Porter Memorial Hospital, testified that "the angiogram was very valuable ... and that *in conjunction with the brain wave test* that Dr. Silberman had done, helped establish the fact that this was in fact an insult to the brainstem or a brainstem stroke." Record at 991. (Emphasis supplied). Dr. Swarmer concluded in his deposition testimony that "[t]he overwhelming evidence is that [Mr. Hill] had an unprotected fall." Record at 92.

Dr. Swarmer accounted for Mr. Hill's complaints of bilateral arm pain by explaining that "it's more likely that he had the arm pain because he fell and bruised his arms because he fell 8 to 10 feet. You bruise your body. It hurts. I feel—if he had arm pain, that's why he complained of it, because he had bruises to his body ... There is no evidence that it was a protected fall." Record at 94.

Dr. Fahey, a medical expert who reviewed the hospital records, the notes of the emergency medical technicians, and the depositions of the treating physicians, also testified that Hill suffered an unprotected fall. Dr. Fahey testified that it was most likely that Mr. Hill fell due to an incident of decreased blood flow to the brain. Dr. Zelaya, a neurosurgeon who treated Mr. Hill at Porter Memorial Hospital, testified that the attack at

---

2. To the extent that the evidence reflects that Mr. Hill prior to his incapacity, orally authorized and directed his wife to sign the necessary worker's compensation paper, such authority terminated when Mr. Hill became comatose.

3. The word "unprotected" was used to describe the apparent fall as unbroken by the use of Mr. Hill's hands or arms for protective purposes.

the plant was caused by poor circulation in the brainstem.

Although Hill maintains that an arteriogram was not the proper test to diagnose a brain stem stroke, she fails to show how such a test lacks all probative value in reaching such a diagnosis. Because the Board heard sufficient competent evidence of probative value to reach its conclusion that Mr. Hill suffered a brainstem stroke which caused an unprotected fall, under our standard of review, its decision must be affirmed.

■ Although Hill's particular Form 12 agreement was a nullity, we note that had she executed the agreement as the duly appointed guardian, the Board would have been unable to vacate the award on the basis of mistake of fact. An agreement to compensation carries with it the same force and effect as an award. *See State v. Puckett* (Ind.App. 1988), 531 N.E.2d 518, 522. An award, once approved, may not be set aside in the absence of mistake, fraud, trickery or duress. *Indiana Univ. Hosps. v. Carter* (Ind.App. 1983), 456 N.E.2d 1051, 1055. The Board has full power to vacate awards for *mistake of fact* and to entertain an application for that purpose at any time such application is made by the employee or employer. *Terre Haute Paper Co. v. Price* (1943), 113 Ind. App. 578, 47 N.E.2d 166, 169; *Aetna Life Ins. Co. v. Shiveley* (1918) 75 Ind.App. 620, 121 N.E. 50; *E.J. Albrecht Co. v. Michaw* (1940) 108 Ind.App. 407, 29 N.E.2d 334.

■ A mistake of fact occurs either "when some fact which really exists is unknown, or, some fact is supposed to exist which really does not." *Terre Haute, supra,* 47 N.E.2d at 170. Because BSC *knew that they were not aware of* all the relevant medical evidence at the time it executed the agreement, it was not operating under a mistake of fact, and the original award based on the Form 12 agreement would have been valid.

Finally, today's decision in no way suggests that a valid Form 12 agreement could not be executed by an agent of an injured, yet competent, employee. Additionally, because this court has validated contracts executed on behalf of an incapacitated principal by someone acting under a durable power of attorney, we recognize that agents might, under certain circumstances, be able to execute valid Form 12 agreements on behalf of incapacitated employees. When all parties are aware of the employee's incapacity, a hard line rule that all Form 12 agreements are nullities if executed by a non-guardian may lead to very harsh and inequitable results. For instance, if an agent who was acting under the directions of a competent employee leaves to execute an agreement, but the employee becomes incapacitated before she can sign the agreement, a strict reading of *Casualty, supra,* 252 N.E.2d at 517, would result in an unduly harsh, if not absurd, result that the agreement was a nullity and of no force or effect.

■ Hill next claims that the Board acted contrary to Indiana law by not considering the positional risk doctrine and failing to make any findings of fact with regard to that theory. However, regardless of the merit of any claim that BSC was liable under the positional risk doctrine, Hill's failure to include the specific issue in her "Stipulated Issues for Trial" is fatal to her claim. Hill's Stipulated Issues for Trial were as follows:

"1. Whether Robert Hill sustained an accidental injury arising out of his employment with Bethlehem.

2. Whether Robert Hill's death was the result of any accidental injury or was the result of some other cause.

3. Whether the Agreement to Compensation approved by the Board on June 16, 1990 should be vacated.

4. Whether Mary Hill filed a timely Application for Adjustment of Claim to entitle Mary Hill and/or Robert Hill's dependents to recover death benefits under the Indiana Worker's Compensation Act." Record at 3372.

Indiana law requires only that the Board make specific findings of fact on elements in issue which are set forth by stipulation of the parties. *Smith v. Graver Tank & Mfg. Co.* (1973) 158 Ind.App. 431, 302 N.E.2d 852. The Board was not required, sua sponte, to consider every non-stipulated theory which may have been applicable in determining Hill's entitlement to benefits under the Act. Therefore, the Board did not act contrary to law by allegedly failing to consider the positional risk doctrine, or failing to include any

findings as to that theory in its denial of benefits.

The decision of the Board is affirmed.

KIRSCH and BARTEAU, JJ., concur.