WILCOX *v.* CLARAGE FOUNDRY & MANFG. CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CONSTRUCTION.

    The workmen's compensation act is in derogation of the common law, and is to be construed and administered according to its terms and as it reads.[1]

2. SAME—INDUSTRIAL ACCIDENT BOARD—AWARD OF COMPENSATION—CORRECTION OF MISTAKE.

    Where an award of compensation based upon an agreement was approved by the accident board and payments made for temporary total disability, and, upon the permanent nature of the injury becoming evident, an agreement for compensation for the loss of a leg was by a mistake entered as approved on the records, and notice of the approval sent to the parties, and the board, on discovery of the mistake, notified the insurance company in time for it to have stopped the payment under the second agreement, the board was not divested of jurisdiction to correct its mistake, and, upon hearing of claimant's petition, to award compensation for total disability for 500 weeks, although the insurance company in fact paid the second award.

3. SAME—TEMPORARY DISABILITY—PERMANENT DISABILITY — CORRECTION OF AWARD.

    Where an award for temporary total disability is made for injury to a leg, and it is later ascertained that the injury is permanent in character so as to cause permanent total disability, a new award for permanent total disability may be made.

   Certiorari to Industrial Accident Board. Submitted November 27, 1917. (Docket No. 170.) Decided December 27, 1917.

   George G. Wilcox presented his claim for compensation against the Clarage Foundry & Manufacturing Company for injuries received in defendant's employ.

   [1]On construction and effect of workmen's compensation acts, generally, see comprehensive notes in L. R. A. 1916A, 23, L. R. A. 1917D, 80.

From an order awarding compensation, defendant and the New England Equitable Insurance Company, insurers, bring certiorari.   Affirmed.

*Frank J. Riggs,* for appellants.

*Jonas B. Houck,* for appellee.

STEERE, J.   George Wilcox was injured in an industrial accident on September 13, 1913, while in the employ of the Clarage Foundry & Manufacturing Company as foreman in its shipping department, earning an average weekly wage of $15.86.   A falling pile of cast-iron plates struck his left leg, breaking it both above and below the knee.   Physicians describe his injuries as a fracture of the lower third of the femur and a compound fracture of the tibia and fibula.   He was at once taken to the hospital, where he received proper care and medical attention, but it is conceded that his limb is permanently crippled and practically useless.   His employer was under the workmen's compensation law, and had insured with its codefendant, the New England Equitable Insurance Company, against loss arising from injuries received by its employees.

A report of the accident dated September 15, 1913, was filed with the industrial accident board on October 1, 1913.   Thereafter the matter of compensation to the injured employee was assumed by the defendant insurance company and all business in that connection conducted by its claim adjuster, A. L. Aiken, so far as this record discloses.   For some time after the accident Wilcox was concededly under total disability for work as a result of his injury, and on October 21, 1913, a first agreement in regard to compensation, fixing the same at one-half his average weekly wage as the act provides, was signed by him and the insurance company, per A. L. Aiken, and filed on October 23, 1913,

with the industrial accident board, which approved it on November 4, 1913. The length of time such payments should continue was not stated, impliedly being left contingent on duration of total incapacity.

Payments were made according to this agreement from time to time, and as the permanent nature of the injury became manifest negotiations were entered into with Wilcox for a final settlement, manifestly on the basis of compensation provided in section 10, part 2, of the compensation act (2 Comp. Laws 1915, § 5440), "for the loss of a leg, 50 per centum of average weekly wages during one hundred and seventy-five weeks." On July 31, 1914, Wilcox petitioned the industrial accident board for direction that the balance of compensation coming to him on that basis be paid in a lump sum. On December 16, 1914, an order was made by the accident board reciting that a personal investigation had been made by one of its members and authorizing defendants "to make a lump sum payment of $500 in accordance with section 22 of part 2 of the law" (2 Comp. Laws 1915, § 5452). In the meantime a second agreement in regard to compensation, signed by Wilcox and the insurance company, per Aiken, was filed with the board on September 23, 1914, which described Wilcox's accident and injury as "resulting in the complete loss of use of the said leg," and stated the agreed compensation to be "at the rate of $7.93 per week for a period of 175 weeks, less 53 weeks' compensation at the rate of $7.93 already paid." A notice of the approval of this agreement by the board, signed by its secretary, dated December 20, 1914, was mailed to the parties in interest. On January 8, 1915, an order was entered by the board stating that an examination of the files and records in this matter erroneously showed approval of said agreement with notice thereof to parties in interest, "whereas, in fact, the board did

not approve said agreement"; that said apparent approval and all records purporting to show the same were therefore "canceled and held for naught, the same having been erroneously made." On the same day a copy of this order was sent all parties in interest, and the following letter and notice, dated January 8th, signed by the secretary of the board, was at once mailed to the defendant insurance company:

"*In re* Clarage Foundry & Manufacturing Company. George G. Wilcox.

"The files and records in the above case, together with the recent correspondence, has been presented to and examined by the board today, and I am directed to write you as follows:

"The second agreement filed in said cause providing for 175 weeks' compensation was recorded and approved by a clerical error. Notice of such approval which was sent you was based on such error, and this notice is sent you for the purpose of correcting the same. The second agreement has not been approved, and its terms do not meet with the approval of the board.

"The order made in the case for the payment of $500 as an advance payment has not been acted upon by your company, and in the opinion of the board, could not be enforced against you for the reason that no notice of hearing on the petition was given or opportunity for your company to be heard in opposition to the same. We are therefore setting for hearing the petition for such lump sum payment, and the same will be brought on before the board on January 26, 1915, in the afternoon of said day.

"This letter will be your notice of such hearing, and your company or its representative will be given full opportunity to present your side of the case at that time."

On January 11th a letter dated January 9th was received by the board from the insurance company, per Aiken, "manager claim department," acknowledging receipt of this communication, stating that on the previous day a draft had been issued to claimant for the

lump sum approved by the board and protesting, with argument, that it could not repudiate its former acceptance of the agreement. Other correspondence followed, and on January 16th the insurance company, acknowledging a letter of the 14th, stated that no reason was seen for its being represented at the hearing. on January 26th, as it had acted on the board's order authorizing payment of $500, and did not wish "to contest a lump sum settlement." In evidence of such payment the following receipt was inclosed:

"Receipt on Account of Compensation.

"Received of New England Casualty Company, the sum of five hundred and three dollars and seventy-five cents, being the proportion of the weekly wages of myself from the 4th day of September, 1915, to the 20th day of January, 1917, under the Michigan workmen's compensation law, subject to review by the industrial accident board, said accident occurring on the 13th day of September, 1913, while in the employ of Clarage Foundry & Manufacturing Company, Kalamazoo, Mich.

"GEORGE G. WILCOX,<br>"308 3d St., Detroit.

"Date 1/8/15."

On January 26, 1915, the board took up the matter of lump sum payment pursuant to the notice given, and after recital of certain facts entered an order "that no further action be taken relative to said petition, such action being made unnecessary by respondent's paying the sum of $500 aforesaid"; notice of said order being sent to the parties in interest. On November 16, 1915, Wilcox filed a petition with the board, alleging that he was totally and permanently disabled as the result of his injury; that the advanced payment made to him was exhausted in meeting medical expenses, etc., so that he was destitute, and praying the board to determine that by reason of such total and permanent disability he was entitled to 500 weeks' compensation, the balance of which should be paid in a lump sum. In

connection with said petition depositions of certain physicians were thereafter taken in the city of Detroit on December 3, 1915, pursuant to notice, at which time counsel for defendants appeared and participated in the examination, first interposing an objection to taking the depositions because the matter had been fully settled and there was nothing then legally pending therein before the board. Thereafter further time was given to all parties to take additional testimony and file briefs if desired, and a hearing upon the petition was set for February 10, 1916. Briefs were filed by counsel for the respective parties; defendant's counsel contended that the matter was fully settled and beyond the power of the board to take further action; that the injured employee was not permanently or totally disabled; that "claimant is now paid up in advance until the 20th of January, A. D. 1917," and in any aspect of the case there could be nothing due before that time. On April 19, 1916, an order was made by the board denying plaintiff's prayer for a lump sum payment, following which considerable correspondence passed and a conference was had between the board, defendants and plaintiff respecting further proceedings in the matter. On February 8, 1917, the insurance company, per A. L. Aiken, filed with the board a petition that it be relieved from making any payments after January 20, 1917. Claimant filed an answer under oath alleging that the compensation already paid him was not because of the loss of his leg, but because of total incapacity to labor by reason of his injuries; that said total incapacity yet continued and he was then in the same condition as at the time of taking the depositions of physicians in Detroit, to which special reference was made and which were offered in evidence. A hearing was had on this petition, February 27, 1917, and on March 20, 1917, an order was made denying the same, with findings of fact and conclusions of law thereon.

Three contentions are urged in defendant's brief, as follows:

"*First.* That the agreement for the payment of compensation on the basis of the loss of a foot conformed to the provision of the workmen's compensation act.

"*Second.* That such agreement, after its approval by the board, became final and binding upon both respondents and the applicant.

"*Third.* That there is no evidence in the record tending to sustain the finding or order made by the board."

Without going into details, it is shown by the testimony and found by the accident board that the injuries to plaintiff were so severe as to result in substantially complete loss of the use of the limb, although the same was not amputated.

In support of their first contention, counsel for defendant quote from the testimony of physicians who emphasize the disabled and useless condition of the limb by saying plaintiff would be benefited and have a better chance to get around if it were amputated and an artificial limb substituted, as he would then have the use of his arms unrestricted by crutches, and urge for our reconsideration the proposition that the statutory provision relative to loss of a member should be construed as including the loss of the use of a member. Various cases are cited in which contracts of insurance have been so construed. The same line of authority was relied upon and like reasons urged as here in the recent cases of *Packer* v. *Motor Works*, 195 Mich., 497 (162 N. W. 80), and *Adomites* v. *Furniture Co.*, 196 Mich. 498 (162 N. W. 965); the contention being there made, however, in behalf of the injured party and opposed by the employer and insurer. It can at least be said of the rule that it works both ways.

This statute is emphatically in derogation of the common law, to be construed and administered according to its terms and as it reads. The conclusion has

been reached by this court in former cases that the schedule in section 10, part 2, of the act is plain and unambiguous; that it is not for the court or the accident board to change its provisions or to read into them palpable additions beyond the distinct limits of what they express. If the act is in certain features unfair, illogical, or incomplete, and should be changed, the remedy is with the legislature. *Limron* v. *Blair*, 181 Mich. 76 (147 N. W. 546) ; *Hirschkorn* v. *Fiege Desk Co.*, 184 Mich. 239 (150 N. W. 851) ; *Weaver* v. *Maxwell Motor Co.*, 186 Mich. 588 (152 N. W. 993) ; *Cline* v. *Studebaker Corporation*, 189 Mich. 514 (155 N. W. 519, L. R. A. 1916C, 1139) ; *Carpenter* v. *Forging Co.*, 191 Mich. 45 (157 N. W. 374) ; *Bruce* v. *Taylor & Maliskey*, 192 Mich. 34 (158 N. W. 153) ; *Purchase* v. *Refrigerator Co.*, 194 Mich. 103 (160 N. W. 391) ; *Packer* v. *Motor Works, supra;* and *Adomites* v. *Furniture Co., supra.*

To defendants' contention that the second agreement was approved by the accident board, and was therefore final and binding upon all parties, we have the records and return of the board that the agreement never was in fact approved by it; that only by mistake and "clerical error" was such record made and notice given, which was promptly corrected when discovered and parties notified, in time as the board finds and returns for the insurance company to have withheld or stopped the advanced payment if so inclined. It is contended there is no evidence to support the latter conclusion, and the payment was made in dependence upon notice of approval. Whether the payment was made the day before or immediately after receipt of notice is of little importance. In making the advance payment but present worth of future weekly payments was computed and paid. Defendants were not prejudiced in that particular, for the injured employee was under total incapacity during the whole

175 weeks covered by such discounted payment and the first agreement for payment during total disability of a moiety of claimant's average weekly wages had been approved by the board and was in force. The second was not in accordance with applicable provisions of the act, had not in fact been approved by the board, as its return and corrected records disclose, and was not therefore binding upon the parties to it.

Upon the hearing of this petition the board found as a fact that the injured employee then was and continuously had been since the accident "totally incapacitated from earning anything whatever in the employment in which he was engaged at the time he received the accidental injury"; that the statutory and agreed compensation of $7.93 per week as approved by the board had been fully paid until January 20, 1917, and directed such weekly payments should continue from that date "while said incapacity shall remain total, for a period not to exceed 500 weeks from the date of the accident."

There is evidence in the record to support the facts found by the board, and under the facts as found it would have been the duty of the board on application by plaintiff and notice to defendants to correct the so-called clerical errors in its records and set aside its erroneous order of approval, even if entered by its direction. The board was not divested of jurisdiction in the matter by the, as it returns, unauthorized and inadvertent entries and notice.

Under the only agreement which the board had in fact approved, as it certifies and returns, the physical condition of the injured employee remained open to inquiry, and the facts found as to his physical condition authorized its order for continuance of payment, which is therefore affirmed.

Kuhn, C. J., and Stone, Ostrander, Bird, Moore, Brooke, and Fellows, JJ., concurred.