MRS. FLOYD COMINGORE (now Mrs. Verna Griffin), Appellant, v. SHENANDOAH ARTIFICIAL ICE, POWER, HEAT & LIGHT COMPANY et al., Appellees.

No. 39225.

June 24, 1929.

*Ferguson & Ferguson* and *C. R. Barnes*, for appellant.

*Stipp, Perry, Bannister & Starzinger* and *Wilson, Keenan & Millhone,* for appellees.

De Graff, J.—This is a compensation case, and the matter in issue finds its origin in a dispute between the parties in in-

terest. This dispute has to do with the meaning of a memoran-
dum of settlement approved by the industrial
commissioner. The insurance carrier, Globe In-
demnity Company, on account of said dispute
with the appellant, Mrs. Floyd Comingore,
widow of the deceased employee, but later Mrs.
Verna Griffin, by fact of her remarriage, filed an application on
February 15, 1924, alleging that, although the form of memoran-
dum of settlement recites ''amount of compensation agreed upon
$4,500,'' it was the intention and understanding of the parties
that compensation was to be paid at the rate of $15 per week
during the compensable period (300 weeks), as provided and
prescribed by the Workmen's Compensation Act, and that, in
the approval of said memorandum of settlement, the industrial
commissioner contemplated that there would be no remarriage of
the widow or any other event which would terminate the com-
pensation period under the terms and the provisions of the Work-
men's Compensation Act, but that, notwithstanding the remar-
riage of the workman's widow and the termination of her right
to compensation under the terms and provisions of the Work-
men's Compensation Act, said claimant is still making a claim
that she is entitled to the full compensation ($4,500), regardless
of her remarriage. The application contained a prayer that the
said matter be set down for hearing, that notice be given to the
claimant, and that, upon a hearing, an order be entered herein,
terminating said compensation as of the date of said remarriage,
and requiring a restitution of any payments made after said
remarriage. Claimant filed an answer and an amendment to the
answer to said application, alleging divers matters, *inter alia*
alleging that the industrial commissioner had no authority to
make any modification or change as to the terms of said memoran-
dum of settlement, for the reason that it was a binding, effective,
and valid contract of settlement between the parties. This was
the primary issue submitted to the industrial commissioner for
decision.

We now turn to the salient facts, which are not disputed in
the record before us. Floyd Comingore was an employee of the
Shenandoah Artificial Ice, Power, Heat & Light Company. On
September 18, 1920, he was injured while engaged in his em-
ployment, and as a result of said injury died, September 19, 1920.

He was survived by his widow, the appellant herein, but left no children or other dependents. The wage of the employee was $116 per month. The medical and hospital expenses were paid, in the sum of $100. It is conceded by all parties that an agreement, or memorandum of settlement, was made with the dependent widow. It is also agreed that the employee's average wages were such that a weekly payment of $15 per week was to be the compensation, which amount was the maximum per week allowed by the Workmen's Compensation Act. It was agreed that Verna Comingore (the widow) was the surviving spouse of the deceased employee, and entitled to the compensation, as provided by the terms, conditions, and provisions of the act. It is undisputed that the appellant remarried on September 17, 1922. Appellee did not learn of the remarriage until in January, 1923, when the payments to the appellant were stopped. Subsequently, appellant commenced an action in the district court of Page County, to recover the payment of a lump sum which it was claimed by her had been agreed upon between her and the employer as the amount of compensation. With this matter we are not concerned. Upon the hearing before the industrial commissioner on the application in question, an order was entered, as prayed. An appeal was taken to the district court of Page County, and the order of the industrial commissioner was affirmed. It is from this decree from the Page County district court that this appeal is taken.

The instant record discloses further the concession of the parties hereto that the employer, Shenandoah Artificial Ice, Power, Heat & Light Company, had accepted the liability provided by this law, and was thereupon bound by the terms thereof. The parties also concede that there was a contract of hire between them, and that both parties thereunder elected to take compensation in accordance with the terms, conditions, and provisions of the law. It is further conceded by the parties that the death of the employee, Floyd Comingore, occurred while the contract of hire aforesaid was in full force and effect, and that the deceased left a surviving spouse, but no other dependents, within the terms as defined in the law.

We first turn to some of the provisions of the Compensation Act. This act expressly provides that the employer and the em-

ployee (or, when the employee is dead, the dependents, as defined) may enter into a memorandum agreement which shall be filed with the Iowa industrial commissioner by the employer or employee or dependent, and unless the commissioner shall, within 20 days, notify the employer and employee of his disapproval of the agreement, it shall stand approved, "and be enforcible for all purposes under the provisions of this act." Section 2477-m25, Code Supplement, 1913. The statute provides that the agreement must be in regard to the weekly compensation to become due, and not for any specified period or stated number of weeks, unless, under the provisions of the act, a specified period or number of weeks is distinctly set out in the schedule as applicable to a particular case. It is quite obvious that the provision that a memorandum of agreement so made shall be filed with the industrial commissioner is salutary, and was intended to bring the agreement of the parties with regard to compensation matters under the paternal care of the industrial commissioner. The act provides:

"Such agreement shall be approved by said commissioner only when the terms conform to the provisions of this act." Section 2477-m25.

The Workmen's Compensation Act is in derogation of the common law, and is to be construed according to its terms, and "as it reads." *Wilcox v. Clarage Foundry & Mfg. Co.*, 199 Mich. 79 (165 N. W. 925). The industrial commissioner possesses such powers as are expressly granted, together with those arising from implications because necessary to the full exercise of the granted powers. *Levangie's Case*, 228 Mass. 213 (117 N. E. 200).

The case at bar does not involve a mistake of law, and the dispute between the parties has reference to the meaning to be given the memorandum agreement approved by the commissioner. The claimant alleges that it means one thing,—to wit, a contract involving a final settlement. This claim has no legal basis whatsoever. The insurance carrier claims that it means just what the Compensation Act intended, and that it is within the power of the commissioner to explain the approved memorandum and thereby end the controversy. This is the true viewpoint. This is not a certiorari proceeding, wherein the only question that

could be involved is whether the inferior tribunal had jurisdiction to perform the act complained of.

The Iowa Compensation Act contemplates an appeal from any order or decree entered by the industrial commissioner, and this procedure was strictly followed in the instant case. The claimant did make answer to the application filed before the commissioner, and a hearing was had before said officer; and there can be no question, under the circumstances, that jurisdiction of the person and of the subject-matter did exist when the hearing on said application was had and the order of the commissioner filed from which an appeal was taken to the district court of Page County, Iowa, as provided by law. We cannot lightly cast aside the action of the commissioner, under the circumstances. We are not dealing with a contract, or the rescission of a contract, but simply with the meaning to be given to the language of a memorandum of settlement. Although the memorandum is technically correct, the claimant puts a construction thereon that is contrary to the provisions of the Compensation Act. Clearly, the commissioner did not act without jurisdiction in making a finality of the dispute. The Compensation Act contemplates that relief shall be had, not through the courts, or with the aid of lawyers, but through the machinery provided by the act itself. It has been said that the purpose of the legislature in the enactment of the act was "to create a tribunal to do rough justice, speedy, summary, informal, untechnical;" and if a court in the slightest degree intrenches upon the prerogatives of the commissioner, one encroachment will breed another, until finally simplicity will give way to complexity, and informality to technicality. See *Flint v. City of Eldon*, 191 Iowa 845.

Neither the industrial commissioner nor any other person has the power to waive any of the provisions of the act. In fact and in law, no contract, rule, regulation, or device whatsoever shall operate to relieve the employer from any liability created by the Workmen's Compensation Act. Section 2477-m7. As to an employee or his dependents, the rights and remedies provided by the act on account of injury are exclusive of all other rights and remedies of such employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury. Section 2477-m2 (a). It may also be pointed out that the term "workman" is used synonymously with

the word "employee," and that any reference to a workman who has been injured shall, where the workman is dead, include a reference to his dependents, as herein defined, or legal representative, and any "injury" or "personal injury" includes death resulting from injury. Section 2477-m16.

It is further provided that no employee or beneficiary, which means a dependent entitled to compensation under the terms of the law, shall have power to waive any of the provisions of this act in regard to the amount of compensation which may be payable to such employee or beneficiary to whom the act applies. Section 2477-m17. In the face of the foregoing plainly expressed prohibition of waiver, it is contended by the appellant that she had power to waive the provisions of the law in regard to the amount of compensation and the manner of its payment. This is not true. Whatever is paid or payable to her must be done under the terms, conditions, and provisions of the act. It was the intent and spirit of the act that the compensation could be agreed upon between the employer and the employee, or his dependents. This applies to the weekly compensation payments, determined by several factors, such as the average weekly earnings, dependents, period of disability, etc.; and when such factors are so agreed upon and the weekly compensation is determined, it is then that the memorandum of agreement of settlement may be made. Section 2477-m25.

The memorandum of agreement filed with the industrial commissioner in this case contained the following entry: "The amount of compensation agreed upon, $4,500." Nowhere in the law can there be found a provision that any such amount of compensation may be agreed upon under the terms, conditions, and provisions of the act. The law states very plainly what may be agreed upon between the parties, and that is, *such compensation as the law says shall be payable,* no more and no less. The terms of the Compensation Act are read into every memorandum of agreement, and in the instant case, the entry should have read substantially as follows:

"Amount of compensation agreed upon. Weekly payments of $15 per week, continuing up to the remarriage or death of the surviving spouse, but in no event to extend beyond 300 weeks from the date of the employee's death."

The industrial commissioner has power to approve an agreement only when the terms of such agreement conformed to the provisions of the act. There was no lump-sum settlement, as contended by appellant. The Compensation Act specifically sets out the conditions whereby such settlements can be made. Section 2477-m14, as amended. It is not contended that the appellant complied with the conditions for a lump-sum settlement, as defined by the act. We are here dealing with a memorandum of settlement, which, as pointed out, is required to be filed with the industrial commissioner, primarily for the information of the commissioner, and to enable him to determine if the settlement made is in accordance with the terms, conditions, and provisions of the law. *Spurgeon v. Iowa & Mo. Gran. Wks.*, 196 Iowa 1268. A memorandum agreement was involved in that case, and in the opinion the purpose and intent of a memorandum agreement are discussed, and in the opinion it is said:

"No one will assume to affirm that, if a workman has signed an agreement which secures to him substantially less than the amount to which he is entitled under the schedule on the basis of time lost, or injury actually sustained, that he will be bound by the agreement."

There are no jokers in the Iowa Compensation Law. It means what it says. Good-faith dealing is required, and we will not indulge in an assumption inconsistent with the legislative intent. Since the industrial commissioner is given powers to approve a memorandum agreement of settlement, that power can only be exercised in accordance with the terms of the act. This power necessarily implies that the commissioner has a knowledge of the law, to guide him in giving his approval.

In the case of *Kramer v. Tone Bros.*, 198 Iowa 1140, the memorandum agreement entry therein, as to the compensation agreed upon, is identical with the entry in the memorandum of settlement in the case at bar, namely, $4,500. An examination of the record in the *Kramer* case will so disclose. In referring to such entry of the memorandum of settlement filed in the *Kramer* case, supra, this court said that the amount of compensation agreed upon was $4,500, and immediately after the words aforesaid, added or injected the statement: "This being 300 times $15." This was simply an explanation of the $4,500 and how

it was derived. We recognized by the quoted statement, supra, that the total amount, as originally recited in the agreement, was the product of two factors: namely, the period during which the compensation was to run, and the weekly rate of compensation, both of which are provided by the Compensation Act. The case involved the right to compensation of the widow as to the balance due after her remarriage. She claimed the balance. The claim of the employer was that the remarriage of the widow abated her right; and the further claim was made that her two minor children were no longer dependents, for the reason that they had been sent to the Soldiers' Orphans' Home at Davenport by. the action of the juvenile court, and that, since the time of their commitment, the children had become wards of the state, and supported and controlled by the said Orphans' Home. The trial court affirmed the action of the industrial commissioner, and found that the remarried claimant had no further rights in the premises, and that the employer and insurance carrier should pay the balance of the compensation (about $3,000) to the children, or their trustee for them, at the rate of $15 per week for the two hundred and one-third weeks remaining. This was in conformity to the provisions of the Compensation Act. In the *Kramer* case, as in this case, the commissioner could not contemplate the remarriage of the widow, but he did know that, in the event of a remarriage, he had the power to furnish an explanation of his decision or his approval, and make his record according to the facts, and enter an order accordingly.

In the *Spurgeon* case, supra, it was decided that the commissioner had the power, under the terms and provisions of the law, to state the period during which the weekly compensation payments were to run; and in that opinion we recognized that the periods were necessarily variable, depending upon the terms, conditions, and facts. We must assume, then, as a matter of fact and law, that, when he approved the memorandum of settlement in the instant case, wherein the maximum amount of compensation to be payable in any event was $4,500, his approval carried with it his knowledge that, upon the remarriage of the surviving spouse prior to the completion of the 300 weekly payments, the payments would terminate.

When the question was raised as to the meaning of his approval of such memorandum of settlement, it was entirely within

the intent of the law that he should be called upon to make a record thereof. Assume that the commissioner did approve a settlement which had the appearance of granting compensation for a longer period, or in total for a larger amount than the act provides, has he no right, upon proper application and notice, to correct same and make it a matter of record? In either case, the remedy would be to have him vacate his approval so made, and enter an order that would conform to the provision of the law, or cause a new agreement to be made which he could legally approve. To negative the jurisdiction of the industrial commissioner, and on that ground reverse the district court, turns all the parties "out into the open." There is no legal reason for so doing. The jurisdiction of the industrial commissioner is statutory and mandatory, and is invoked when compensation is sought for the injury or death (which are made synonymous, as far as compensation is concerned). The statute puts the parties under a measure of disability. Neither party can, of his own volition, as heretofore pointed out, escape the provisions of the statute. Remedial jurisdiction is exclusive in the industrial commissioner, whether the parties appear before him or not. See *Eddington v. Northwestern Bell Tel. Co.*, 201 Iowa 67. The case before us is a death case, with a childless widow as sole dependent. It may not be contended that the provision of the statute (Section 2477-m34, Code Supplement, 1913) is available only to the employer or employee, and that it is applicable only when there has been some change of the bodily condition of the employee. The trouble with this contention is that the statutory proviso has no application whatever to the case.

In *Davey v. Norwood-White Coal Co.*, 195 Iowa 459, although we held that there could be no change of condition after the death of the injured employee, and that there could be no subsequent change in the rate of compensation fixed under the statute, we further held that the exception or proviso must be respected in a case where the widow, being the sole dependent, remarried. In a strict statutory sense, the instant proceeding is not one to review the original award. Upon the remarriage of the widow, the statute necessarily operates upon the existing memorandum, and it may be conceded that such an order as entered herein is not essential to terminate the liability of the employer or of his insurance carrier. Nevertheless, as the industrial

commissioner is delegated with full authority to act in all compensation matters, the method adopted is not to be criticized or challenged, since it is a method of bringing the extraneous facts into the formal record and ending a dispute. Both the dependent and the insurance carrier are in a position to claim the protection of the statute, and a court should not restrict the terms and provisions of the statute or the implied power incident to the exercise of his jurisdiction.

The language of the opinion in the case of *Aetna Life Ins. Co. v. Shiveley,* 75 Ind. App. 620 (121 N. E. 50), is quite appropriate in the case at bar:

"The board [corresponding to Iowa's industrial commissioner] is not expressly authorized to vacate an order approving such an agreement as involved here. It is expressly authorized to approve such an agreement, fairly made, and conforming to the act. It necessarily follows that, as an incidental power, the board is authorized to determine whether such an agreement was fairly made, and whether it does conform to the act, but when the board's approval has been procured by fraud, or is the result of mistake or the like, and where, as a consequence, the agreement and its approval have no just foundation upon which to stand, it seems to us apparent that, in any pending proceeding, the board, as an incidental power, has a right to determine such fact, and if found to exist, annul the order approving the agreement. * * * It has been intimated by this court *In re Stone,* supra [66 Ind. App. 38 (117 N. E. 669)], and we now hold, that, in any proceeding pending before the board involving either the determination or the administration of a claim, the board has the power, on the application of any interested party, including an insurance carrier, to vacate its own order on application seasonably and diligently made, where it appears that any such order is the result of fraud, duress, mistake, gross irregularity, affecting substantial rights and the like."

Errors in approving a memorandum of settlement should be corrected by the Iowa industrial commissioner when brought before him by any of the parties interested in such a settlement. We recognized this method in *Kramer v. Tone Bros.,* supra, and in the cases herein cited. In the instant case, the insurance carrier represented the employer, since the latter delegated the power to

the former to represent the employer in matters relating to compensation cases. It was the proper performance of its function for the insurance carrier to present the question of the correctness of the approval of the industrial commissioner as to the memorandum of settlement filed in this case.

As to the alleged withdrawal of appearance and disclaimer of the Shenandoah Artificial Ice, Heat, Light & Power Company, the claim is wholly immaterial. See *Employers Mut. Liability Ins. Co. v. McCormick*, 195 Wis. 410 (217 N. W. 738). It is sufficient to say that the principal could not, in this event, repudiate the acts of its agent, especially so as such act was in the interest of said principal and performed under the delegation of power given by the employer; and, therefore, the employer must be held to be bound by this act by its agent under the provisions of the policy contract through which the employer, as required by law, insured or secured the payment of compensation which might become due from the employer under the terms of the law, on account of injury or death of his employee.

We conclude that, as the controversy in this case arose over an error or mistake, the matter giving rise to this proceeding should be corrected where it was made. As said in *Aetna Life Ins. Co. v. Shiveley*, supra, the industrial commissioner undoubtedly has the right and power to correct any mistakes which he has made while acting in his official capacity. The decision of the industrial commissioner should have been limited to a determination of the period during which compensation was payable to the surviving spouse, based on the facts as shown by the evidence at such hearing. As stated, an appeal was taken from the industrial commissioner's order to the district court of Page County, Iowa, and it was there affirmed. The order of the industrial commissioner as made, with respect to the period during which the weekly compensation of $15 per week was payable to the surviving spouse,—that is, up to the date of her remarriage, —was correct. In this respect, but no further, the order was properly affirmed by the district court of Page County, Iowa.

As to the restitution of the moneys theretofore paid, the commissioner acted without jurisdiction in the premises. An action in assumpsit for money had and received by the claimant

beyond the statutory period is for another tribunal to determine and decide.

Wherefore, the judgment entered is—*Modified and affirmed.*

EVANS, ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.