Helen Eckhart, by Lena Eckhart, her Next Friend, Appellee, v. United States Fidelity and Guaranty Company, Appellant.

Gen. No. 8,887.

Heard in this court at the February term, 1935. Opinion filed May 17, 1935. Rehearing denied June 26, 1935.

BURNS & BURNS, of Kankakee, and McKENNA, HARRIS & SCHNEIDER, of Chicago, for appellant; JAMES J. Mc-

KENNA and ABRAHAM W. BRUSSELL, of Chicago, of counsel.

LUTHER B. BRATTON and CHARLES W. KURTZ, both of Kankakee, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

At the October term, 1928, of the circuit court of Kankakee county, Helen Eckhart, by her next friend, instituted this proceeding in debt against the United States Fidelity and Guaranty Company. The declaration alleges that on March 22, 1927, the defendant was indebted to the plaintiff in the sum of $4,500 and after that date promised to pay the plaintiff said amount, with interest thereon. It was further alleged that the father of the plaintiff was Henry Eckhart, and that he, on April 18, 1925, was accidentally killed at Fort Dodge, Iowa, and that under the provisions of the Workmen's Compensation Law of Iowa, the dependents of Henry Eckhart became entitled to receive the sum of $15 per week for 300 weeks and the defendant assumed and guaranteed said payments and being so liable paid Lillian Eckhart, the surviving widow of Henry Eckhart, deceased, the sum of $15 per week for 100 weeks; that on said March 22, 1927, the widow of Henry Eckhart remarried and said payments then became owing to the plaintiff, she then being the sole surviving dependent of said Henry Eckhart, deceased. The declaration also contained the consolidated common counts. Pleas and replications were filed and the issues having been made up, the cause was heard, by agreement of the parties, by the court, a jury being waived, and on March 21, 1934, a judgment was rendered in favor of the plaintiff and against the defendant for $3,518.55. At the time of the rendition of the judgment, the trial court filed a memorandum stating that there was "only one question presented in the

case: Did the defendant promise to pay the plaintiff the sum of $4500.00 less the amount already paid by the Company to the former beneficiary? The Statute of Iowa is not involved. I am of the opinion that there is sufficient evidence in the record to sustain the contention of the plaintiff that the defendant promised to pay the sum to the plaintiff. It is not necessary that a consideration pass directly from the plaintiff to the defendant. A consideration that passes to the defendant from the third party is sufficient. There will be judgment in favor of plaintiff for $3518.55, which includes $2814.84 principal and five years interest at five per cent." It is from this judgment that this appeal has been perfected.

It is the theory of the plaintiff below, appellee here, that a contract existed between the parties hereto, by the provisions of which defendant below, appellant here, promised appellee, in Illinois, to pay her the balance upon an award which had theretofore been made in Iowa, according to the provisions of the Workmen's Compensation Law of that State, that A. K. Rossi was an adjuster and a representative of appellant and the promise to pay appellee was made by him. It is the contention of appellant that the competent, relevant evidence does not show that Rossi was the adjuster and representative of appellant, but if he was, neither he nor the defendant ever made any promise to pay appellee any sum whatever. It is further contended by appellant that assuming the promise to pay appellee was made by appellant, there was no consideration therefor, it was never accepted by appellee and is unenforceable because it would be in direct violation of the provisions of the Workmen's Compensation Law of Iowa as in the final analysis of appellee's case she is seeking to enforce rights which accrue to her solely and are enforceable only under the Iowa Compensation Act.

The evidence discloses that Henry Eckhart was the father of appellee and that on April 18, 1925, he was employed at the Wahkonsa hotel in Fort Dodge, Iowa, and on that day sustained accidental injuries which arose out of and in the course of his employment and from which he died. At the time of his injuries and death, he and his employer were subject to and under the provisions of the Workmen's Compensation Act of the State of Iowa and appellant was the insurance carrier of Eckhart's employer. Eckhart was survived by Lillian Eckhart, his second wife, who was remarried on March 22, 1927. Lena Eckhart was Henry Eckhart's first wife, and they were divorced and appellee, who is the daughter of Henry Eckhart by his first wife, made her home with her mother, and they were living near Momence in this State at the time of Henry Eckhart's death. Upon the death of Henry Eckhart, appellant, acting under the provisions of the Workmen's Compensation Law of Iowa, paid Lillian Eckhart, his surviving wife, compensation for a period of 132 weeks, the amounts so paid aggregating $1,685.16. On March 22, 1927, Lillian Eckhart remarried and the parties hereto stipulated that under the Iowa law her marriage operated to discontinue any further compensation payments and that payments by appellant to her ceased at that time.

The evidence further discloses that on July 9, 1925, being less than three months after Henry Eckhart's death, appellant wrote appellee, informing her of her father's death and of the fact that it carried workmen's compensation insurance for his employer and advising her that under the laws of Iowa the sum of approximately $4,500 in benefits was payable to his dependents. The letter further states that appellant had discovered appellee's address and that it hesitated to accept the widow of the deceased by the second marriage as his sole dependent. The letter con-

cluded by stating that it was writing her in order to give her an opportunity to set forth her claim, if she, appellee, is in fact actually a dependent and desires to make a claim. The letter also suggested that she refer the matter to an attorney for advice and counsel. This letter was taken by the mother of appellee to an attorney at Kankakee, who answered it on July 21, 1925, stating that appellee was born on January 9, 1916, and that he, on behalf of appellee, made a claim upon the fund mentioned in appellant's letter of July 9, 1925, as a dependent of Henry Eckhart, deceased. Appellant replied to this letter the next day, stating that the matter of dependency had been referred to the industrial commissioner of Iowa for an opinion, who ruled that the compensation was payable to Lillian Eckhart, the surviving widow of Henry Eckhart. The letter further advised appellee's attorney that in the event the surviving widow should die or remarry, compensation will cease, provided there is no dependent child, and stated that appellant believed that whether or not appellee has a right to claim for support is a matter outside the rule of law provided for payment of compensation to the widow. Nothing further seems to have been done until December 28, 1927, when appellee's attorney wrote appellant, stating that the surviving widow having remarried, the compensation payments as he understood the law should then go to appellee. Appellant answered this letter on January 3, 1928, stating that under the Iowa law appellee would be entitled to the remaining benefits and that as she was a minor, a guardian would have to be appointed and inquiring whether appellee would be interested in a lump sum settlement. On January 9, 1928, appellee's attorney replied and requested appellant to advise him how much was coming to appellee and what amount appellant would give her for a lump sum settlement. On January 11, 1928, appellant replied that be-

fore finally approving the balance due appellee, it would be necessary for appellant to be advised whether or not appellee's mother had remarried. On January 19, 1928, appellee's attorney replied that appellee's mother had not remarried. About this time or in late December, 1927, appellee's attorney testified that a gentleman representing himself as A. K. Rossi and an adjuster for appellant called upon him and stated that he had had a talk with appellee and that ''if appellee was the child of Henry Eckhart and that Lena Eckhart had not remarried, then the balance of this money or this compensation money was due Helen Eckhart and the Company did not care to contest that. However, he wanted a little while longer to make a further investigation as to the marital state of Lena Eckhart.'' That thereafter appellee's attorney wrote appellant directing his letter to the attention of A. K. Rossi, adjuster, and inquired whether he could come to Kankakee the following Tuesday with reference to appellee's claim, and stated that if he could ''we can arrange to see the necessary parties here.'' On the 26th of April following, appellant answered this letter through the superintendent of its claim department, stating that they were unable to make the necessary arrangements to be at the office of appellee's attorney on the Tuesday suggested, but if appellee's attorney would make arrangements for some later date and advise appellant, they would have a representative call. On April 27th, appellee's attorney replied that he would be in a position to confer about the matter at one o'clock April 30th. Appellant did not reply to this letter and again on May 10, 1928, appellee's attorney wrote appellant that he would be in a position to confer with appellant's representative at one o'clock on May 14, 1928. There was no reply to this letter and nothing further appears to have been done until November 7, 1928, at which time appellee's attorney again wrote appellant, in

which he referred to the previous correspondence and in particular to the letter of January 3, 1928, and inquired how much appellant would be willing to pay for a lump sum settlement. On the following day, November 8, 1928, appellant replied, stating that some time previous the Des Moines office of appellant had requested the Chicago office to make some further investigation in connection with appellee's case, that the investigation had not been completed, that appellant had information to the effect that Lena Eckhart had remarried and if this proved true, appellee would not be considered a dependent and that until something more definite developed appellant would not be in a position to consider settlement.

From the foregoing evidence it is apparent that the parties were simply negotiating and in the process of entering into a settlement. The first letter that was written after the death of Lillian Eckhart was simply a statement of appellee's attorney to the effect that as he understood the Iowa law, further compensation payments should then go to his client. Appellant replied and wanted to know whether appellee would be interested in a lump sum settlement, to this appellee's attorney wanted to know the amount that his client was entitled to and how much appellant would give in settlement thereof. Appellant studiously avoided this inquiry and never at any time ever stated how much had been paid Lillian Eckhart, how much was due appellee or ever submitted a proposition for a lump sum settlement, but did state that before approving the balance due appellee, it would be necessary to know whether appellee's mother had remarried. Appellant was advised by appellee that her mother had not remarried and this was the status of the negotiations when Mr. Rossi called and although he stated that if appellee was the child of Henry Eckhart and that her mother had not remarried, then the balance of the compensation

money was due Helen, he never said what the balance amounted to, but advised appellee's attorney that he wanted a while longer to make a further investigation as to the marital status of Lena Eckhart. Thereafter, counsel for appellee sought to have a representative of appellant come to Kankakee and make this investigation, but no one came and 17 days before this suit was instituted, appellee's attorney again sought to open the previous negotiations and wrote appellant again and inquired how much appellant would be willing to pay for a lump sum settlement. Appellant replied and refused to negotiate any further and the instant suit resulted.

Upon the death of Henry Eckhart, in the course of his employment, his dependents could have instituted proceedings before the Iowa industrial commissioner to obtain compensation as provided by the Workmen's Compensation Act of that State. Counsel for appellee in her argument says that the proceedings in Iowa were had without Helen Eckhart being a party, that those proceedings have been concluded and a judgment was rendered in Iowa and that the instant case is an action seeking to enforce a promise made in Illinois by appellant to appellee, based upon a judgment rendered in Iowa. The record in the instant case discloses that the industrial commissioner of Iowa made an award to Lillian Eckhart. Certainly this proceeding is not based upon that award because appellee was not a party thereto and no award was ever made to her and so far as the record in this case discloses there never was any judgment rendered upon that award. If there had been a judgment rendered in appellee's favor in Iowa, suit upon that judgment could have been maintained in Illinois. 34 C. J. 1114. But the Iowa statute is like ours and makes void any agreement, written or oral, providing for the payment of compensation entered into between an employer and those entitled to com-

pensation, unless approved by the Iowa industrial commissioner. *Reeves v. Northwestern Mfg. Co.,* 202 Iowa 136; *International Coal & Mining Co. v. Industrial Commission,* 293 Ill. 524. In *Hoover v. Central Iowa Fuel Co.,* 188 Iowa 943, the Supreme Court of Iowa construed the compensation law of that State to mean that where a child under 16 years of age was living with her mother, who is separated from her natural father and this mother had remarried so that the minor child had a stepfather, then such minor child was not entitled to compensation as a dependent for the death of the natural father. This construction of the Iowa law shows plainly why appellant was desirous of finding out the marital status of appellee's mother, and which indicates to us that there was never any contract in fact made between the parties hereto whereby the appellant agreed to pay appellee any definite sum.

While the evidence in the instant case discloses that Lena Eckhart never remarried, it also discloses that no award or judgment was ever rendered in favor of appellee in Iowa and under the construction which the Iowa courts have placed upon the provisions of the compensation act of that State, the fact that she had not remarried was a condition precedent to appellee obtaining an award. The evidence further discloses that appellant paid compensation to Lillian Eckhart for 132 weeks, leaving 168 weeks of the 300-week period. The negotiations between the parties covered a considerable period, yet when this action was begun, less than two-thirds of the 300-week period had elapsed. If there was a valid, enforceable contract entered into between the parties hereto, it must have been that appellant would pay appellee $15 per week for a certain number of weeks, but nowhere in the negotiations is the number of weeks or amount stated. Appellee must have contemplated the amount was to be paid in instalments or she would not have inquired as to the

amount appellant would be willing to pay for a lump sum settlement.

In 6 R. C. L., page 616, it is said that a contract is not closed while any mutual act between the parties remains to be done to give either a right to have it carried into effect, nor is a contract consummated so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none; nor does it regard an arrangement as completed which the parties thereto regard as incomplete. In 13 C. J., sec. 100, pages 289, 290, it is said: ''The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into.'' It is clear that the parties hereto during all the time of their correspondence and negotiations had in mind the compensation liability of appellant to appellee under the Iowa statute, and we fail to find that appellant ever made any definite offer to pay which was ever accepted by appellee.

Appellee insists, however, that the statement of Mr. Rossi to appellee's attorney to the effect that if appellee was the daughter of Henry Eckhart and if Lena Eckhart had not remarried that then the balance of the compensation was due her and that the company did not care to contest that feature of the case is binding upon appellant and that it was not necessary for appellee's attorney to accept this proposition because the contract entered into by the employer of Henry Eckhart and appellant was for the benefit of appellee; that by that contract appellant, as the insurance carrier, became bound to pay the dependents of Henry Eckhart as provided by law, and that appellee is his sole dependent and therefore a contract to pay her was

created by operation of law. If appellee is relying on a promise made by appellant in Illinois to pay appellee the balance due under its contract with her father's employer, then appellee is relying upon an express contract and not a contract created by operation of law. If she is relying upon a contract created by operation of law for her benefit, then the only kind of liability imposed upon appellant was a liability under the Workmen's Compensation Act of the State of Iowa. This liability under the Iowa law can only be fixed by following the procedure outlined in that act, as the act specifically provides that the rights and remedies thereby created are exclusive. *Comingore v. Shenandoah Artificial Ice, Power, Heat & Light Co.,* 208 Iowa 430. And the method for determining that liability will not be enforced by the courts of this State.

In our opinion the judgment of the trial court was not warranted by the evidence and it is therefore reversed.

*Judgment reversed.*